| | |
|---|---|
| SHANEEKA LEVETTE HARRIS-BETHEA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No.:  3:13-CV-669-TAV-HBG |
| | ) |
| BABCOCK & WILCOX TECHNICAL | ) |
| SERVICES Y-12, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This civil case is before the Court on Defendant's Renewed Partial Motion to Dismiss [Doc. 20]. Defendant moves the Court to dismiss plaintiff's claims that defendant: (1) created a hostile work environment due to harassment on the basis of race and gender, pursuant to Title VII of the Civil Rights Act of 1964[1] ("Title VII"); (2) discriminated against her the basis of disability, pursuant to the Americans with Disabilities Act of 1990[2] ("ADA"); (3) discriminated against her on the basis of race, gender, and disability in connection with workplace drug testing in October 2009 and October 2010, pursuant to 42 U.S.C. § 1981 ("§ 1981"), Title VII, the ADA; and (4) created a hostile work environment due to harassment on the basis of race, pursuant to § 1981. Plaintiff has responded in opposition [Doc. 22], and defendant has replied [Doc. 24].

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] 42 U.S.C. § 12101 *et seq.*

For the reasons that follow, defendant's motion will be granted in part and denied in part. Specifically, the Court will dismiss any discrete claim for discrimination under § 1981, Title VII, or the ADA arising from workplace drug testing that occurred in October 2009, and the Court will dismiss any discrete claim for discrimination under Title VII or the ADA arising from workplace drug testing that occurred in October 2010.

I.  **Background**

According to plaintiff's amended complaint [Doc. 10], plaintiff is an African-American woman who was employed by defendant as a Wellness Coordinator from October 2008 to November 21, 2011 [*Id.* at p. 2, 7–8]. Plaintiff alleges that throughout her time as an employee, she was discriminated against and harassed because of her race and gender [*Id.* at p. 2–9]. She further alleges that she was discriminated against on the basis of race, gender, and disability during the course of an investigation into her procurement practices, which culminated in the termination of her employment [*Id.* at p. 5–10]. Plaintiff also alleges that the termination of her employment violated the Family and Medical Leave Act ("FMLA"), and that the decision to remove her from her position was made in retaliation for her exercise of equal employment rights [*Id.* at p. 7–11].

Plaintiff alleges that on or about October 1, 2009, she was asked by defendant to undergo a random drug test [*Id.* at p. 2]. She alleges that, unlike white employees, she did not receive a courtesy call to remind her about the drug test, and she left work for the day without having provided the requested drug testing sample [*Id.* at p. 3]. Later that day, she received a telephone call from David Wayne Neubauer about having missed the

2

test [*Id.*]. She offered to return immediately to the testing facility, but her offer was declined, unlike white employees who had in the past been allowed to provide late samples [*Id.*]. Instead, she was required to attend a meeting with one of her supervisors, Doug LeVan, along with Steve Weaver, during which she was informed that she would be placed on administrative leave [*Id.* at 3–4].

On October 20, 2009, Mr. LeVan contacted plaintiff to request that she attend another meeting, this time with Mr. LeVan, "Ms. Henderson," and Mr. Weaver, all of whom are Caucasian [*Id.*]. At the meeting, plaintiff was informed that she would be required to undergo a hair follicle test at her expense [*Id.*]. Plaintiff alleges that defendant's policy at the time permitted an employee who had failed a drug test to request a second test, and if the second test was negative, defendant would pay the cost [*Id.*]. Plaintiff alleges that she was not offered any reimbursement for the cost of the hair follicle test if it came back negative [*Id.*].

The hair follicle test did come back negative [*Id.*]. Plaintiff alleges that she was denied two weeks of pay from the approximately five weeks of work she missed as a result of being placed on administrative leave [*Id.*]. Upon returning to work, plaintiff was required to sign a document in which she admitted to acting "egregiously negligent" for missing her original drug testing appointment, and she was placed on probation for twelve months [*Id.* at p. 4]. Plaintiff filed an ethics complaint with defendant regarding her treatment in the matter [*Id.*].

3

In October 2010, near the end of plaintiff's twelve-month probationary period, defendant requested that plaintiff undergo another drug test [*Id.*]. Plaintiff alleges that during the specimen collection process, the collecting agent required her to "strip naked from the waist down, spin around in front of said agent, and then urinate into specimen containers while the agent watched" [*Id.*]. Plaintiff alleges that this action occurred twice, and that it violated guidelines for federal workplace drug testing programs [*Id.*]. It also resulted in her embarrassment, degradation, and humiliation [*Id.*]. Plaintiff alleges that no white male or female employees, including Mr. LeVan, Ms. Henderson, and Mr. Weaver, were required to undergo such a drug testing procedure [*Id.*].

In addition to the incidents regarding workplace drug testing, plaintiff alleges that during the course of her employment, Mr. LeVan referred to women as "bitches" and asked plaintiff to justify hiring a "fat administrative assistant" who also was female [*Id.*]. Plaintiff further alleges that throughout the course of her employment, Mr. LeVan "continually harassed" her "verbally," and that he required her to violate procurement and requisition procedures [*Id.*]. Plaintiff alleges that Mr. LeVan did not act in such a manner toward his white male employees [*Id.*].

Plaintiff also alleges that Mr. LeVan failed to act upon his knowledge that one of plaintiff's co-workers, "Mr. Lariviere," "continually harassed her about the height of the heels on her shoes and any possible violations of the companies [sic] shoe policy" [*Id.* p. 4–5]. Plaintiff further alleges that unlike her white co-workers, her job duties were frequently changed without appropriate guidance, training, or continuing education, and

4

that she was excluded from trips intended to provide training and opportunities for advancement [*Id.* p. 5].

Regarding the circumstances that ultimately gave rise to the termination of her employment, plaintiff alleges that at Mr. LeVan's insistence, she engaged in procurement practices that violated defendant's policies in the course of obtaining equipment for defendant's new workout facilities [*Id.* p. 5–7]. Defendant eventually opened an investigation into those procurement practices [*Id.* at p. 5–6].

On August 17, 2011, plaintiff's physician placed her on 20 hours of work per week under the FMLA due to her anxiety, depression, and sleeplessness [*Id.* at p. 6–7]. She alleges that defendant was notified of these restrictions on August 18, 2011 [*Id.* at p. 7]. Plaintiff further alleges that on November 2, 2011, while she was still working on a part-time basis, she was called into a meeting in which she was given the option of being demoted to a lesser position or resigning [*Id.*]. On November 4, 2011, plaintiff's physician placed her on full-time leave under the FMLA for two weeks [*Id.*]. Plaintiff alleges that defendant was notified of these new restrictions on November 7, 2011 [*Id.*].

Also on November 4, 2011, plaintiff alleges that she "initially filed and started a timely charge of discrimination and retaliation" with the Equal Employment Opportunity Commission ("EEOC") [*Id.*]. On that date, plaintiff completed and submitted to the EEOC a form document entitled "U.S. Equal Employment Opportunity Commission Intake Questionnaire" ("Intake Questionnaire") [Doc. 10-1 p. 2–5]. In connection with her EEOC filing, plaintiff submitted an undated and unsigned three-page document

entitled "Response for EEOC Document" [Doc. 10-1 p. 6–8]. The "Response for EEOC Document" describes in more detail defendant's alleged discriminatory actions [Doc. 10-1 p. 6–8]. The EEOC gave defendant notice of plaintiff's complaint on November 9, 2011 [Doc. 10-3].

Plaintiff alleges that on November 13, 2011, she sent an email to defendant, advising defendant that she had discovered a considerable wage disparity between herself and similarly situated Wellness Coordinators [Doc. 10 p. 7]. Plaintiff alleges that on or about November 18, 2011, defendant received notice that her physician had extended her full-time FMLA leave to December 19, 2011, because her "medical condition was exacerbated by the hostile work environment conditions" [*Id.*].

Plaintiff's employment was terminated on November 21, 2011 [*Id.* at p. 7–8]. She alleges that she was qualified for her position as a Wellness Coordinator based on her higher education, and that she was capable of performing her essential job functions [*Id.* at p. 8]. Plaintiff further alleges that she was replaced by Gary Hall, a white male who is not disabled [*Id.*].

On November 29, 2011, plaintiff filed an EEOC form document entitled "Charge of Discrimination" [Doc. 10-1 p. 1]. The one-page document was signed by plaintiff "under penalty of perjury" [*Id.*]. It contains a short narrative regarding defendant's investigation into plaintiff's procurement practices and subsequent decision to remove her from her position as a Wellness Coordinator [*Id.*]. In the document, plaintiff checked the boxes for discrimination based on "race," "sex," and "retaliation" [*Id.*]. She listed

6

August 1, 2011, as the earliest date that discrimination took place, and November 2, 2011, as the latest date that discrimination took place [*Id.*].

Plaintiff received her right-to-sue letter from the EEOC on August 16, 2013 [Doc. 10 p. 2]. This action followed on November 11, 2013 [Doc. 1].

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). It requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly*, 550 U.S. at 557)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In doing so, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all

reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## III.  Analysis

Defendant does not seek the dismissal of all of plaintiff's claims [Doc. 21 p. 18–19]. Defendant has not asked the Court to dismiss plaintiff's claims under the FMLA [*Id.* at 18]. Defendant also has not asked the Court to dismiss plaintiff's claims under Title VII or § 1981 in connection with its decision to remove plaintiff from her position as a Wellness Coordinator, or its decision to terminate her employment [*Id.* at p. 18–19].

As grounds for its partial motion to dismiss, defendant submits that plaintiff has failed to exhaust her administrative remedies for the following claims: (1) "Plaintiff's Title VII hostile work environment claim," (2) "Plaintiff's Americans with Disabilities Act claim," and (3) "Plaintiff's claims concerning her drug tests" [Doc. 20 p. 1]. Additionally, defendant submits that "[p]laintiff's claims concerning her drug tests" are barred by the statute of limitations [*Id.*]. Finally, defendant submits that plaintiff has failed to adequately state a claim for relief for the following claims: (1) "Plaintiff's claims concerning her drug tests," and (2) "Plaintiff's conclusory claim of racial

8

harassment and conclusory claims about other purported discriminatory acts" [*Id.* at p. 1–2]. The Court addresses each in turn.

### A.      Exhaustion of Administrative Remedies

Before a plaintiff may file an action in federal court under Title VII or the ADA, she must first exhaust her administrative remedies. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361–63 (6th Cir. 2010) (discussing exhaustion under Title VII); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (discussing exhaustion under the ADA). The exhaustion requirements under each statute are the same. 42 U.S.C. § 2000e–5 (setting forth the procedures for enforcing Title VII); 42 U.S.C. § 12117(a) (adopting the procedures of 42 U.S.C. § 2000e–5 for ADA claims).

As part of the administrative exhaustion requirements, an aggrieved employee must file a charge with the EEOC. *Younis*, 610 F.3d at 361–62. Generally, a plaintiff may not bring claims in a subsequent civil action that were not included in her EEOC charge. *Id.* at 361. "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* (quoting 29 C.F.R. § 1601.12(b)).

EEOC charges are "construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations of the EEOC charge." *Id.* at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)); *see Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (citing *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001))

9

(explaining that a liberal construction of an EEOC charge may be appropriate even if the charge was prepared by an attorney rather than a *pro se* complainant). Accordingly, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Younis*, 610 F.3d at 362 (alteration in original) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)) (internal quotation marks omitted).

### 1. The Documents That Constitute Plaintiff's EEOC Charge

Plaintiff submits that three documents constitute her charge to the EEOC, and she attaches them "collectively" to her complaint [Doc. 10 p. 7; Doc. 10-1]: (1) the EEOC "Intake Questionnaire" form, dated November 4, 2011, and signed by plaintiff [Doc. 10-1 p. 2–5]; (2) the undated and unsigned document entitled "Response for EEOC Document" [Doc. 10-1 p. 6–8];[3] and (3) the EEOC "Charge of Discrimination" form, dated November 29, 2011, and signed by plaintiff "under penalty of perjury" [Doc. 10-1 p. 1]. Plaintiff argues that the Court should consider the content of all three documents when deciding whether she has exhausted her administrative remedies [Doc. 23 p. 8]. Defendant argues that only the single-page EEOC "Charge of Discrimination" form constitutes an EEOC charge, and so the Court should consider the content of only that document [Doc. 21 p. 3–6].

---

[3] Plaintiff suggests in her motion papers that the "Response for EEOC Document" was submitted in connection with her EEOC "Intake Questionnaire" form [Doc. 23, p. 8]. Defendant agrees with this characterization of the documents [Doc. 21 p. 3; Doc. 24 p. 2].

The Sixth Circuit has already resolved this issue. In *Williams v. CSX Transp. Co.*, the Court of Appeals explained that a document submitted to the EEOC must satisfy three requirements in order to be considered a charge:

> [T]he filing (1) must be 'verified'—that is, submitted under oath or penalty of perjury, 29 C.F.R. § 1601.3(a); (2) must contain information that is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of,' *id.* § 1601.12(b); and (3) must comply with [*Fed. Express Corp. v.*] *Holowecki*—that is, an 'objective observer' must believe that the filing 'taken as a whole' suggests that the employee 'requests the agency to activate its machinery and remedial processes,' 552 U.S. 389, 398, 402, 128 S. Ct. 1147 [2008].

643 F.3d 502, 509 (6th Cir. 2011). An EEOC "Charge of Discrimination" form, like the one that plaintiff filed on November 29, 2011, qualifies as an EEOC charge. *Id.* at 510.

Even initially unverified documents that are written in narrative form may qualify. When an unverified document that otherwise meets the charge requirements has been filed with the EEOC, a subsequent filing of a verified document that meets the charge requirements effectively amends the prior filing to cure its technical defect. *Id.* at 509 (citing 29 C.F.R. § 1601.12(b)). Thus, the Court of Appeals in *Williams* found that an unverified seven-page "Charge Information Form" was an EEOC charge when: (1) a verified "Charge of Discrimination" form subsequently had been filed with the EEOC; (2) the "Charge Information Form" identified the plaintiff's employer and named the employee who was the alleged offender; and (3) the "Charge Information Form" contained a statement from the plaintiff that the defendant's "facility was 'a very hostile

11

work environment' and that she 'fe[lt] that [CSX] owe[d] [her] money damages." *Id.* at 509–10 (alterations in original).

In this case, plaintiff's "Intake Questionnaire" and "Response for EEOC Document" are substantially the same as the "Charge Information Form" in *Williams*. Although neither document was initially verified, plaintiff has alleged sufficient facts—and defendant does not dispute—that she submitted both documents to the EEOC prior to filing the verified "Charge of Discrimination" form on November 29, 2011. Therefore, both documents have been amended by the "Charge of Discrimination" form to cure their technical defect. *Id.* at 509.

Additionally, the "Intake Questionnaire" and "Response for EEOC Document" both identify defendant by name, along with individuals who allegedly were involved in discriminatory conduct. For example, Mr. LeVan is mentioned in both documents. Moreover, plaintiff specifically describes instances of alleged discriminatory conduct in both documents.

Finally, both documents ask the EEOC to activate its remedial machinery. In the "Intake Questionnaire," plaintiff checked box number two on the last page, which states, in part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination that I described above" [Doc. 10-1 p. 5]. In the "Response for EEOC Document," plaintiff concludes her three-page narrative by writing, "I would appreciate the assistance of the EEOC in investigating this issue so that the company and I can come to an agreeable solution" [Doc. 10-1 p. 8]. Therefore, both the "Intake Questionnaire"

12

and the "Response for EEOC Document" meet the requirements to be considered EEOC charges.

Defendant argues that *Williams* is distinguishable from this case because in *Williams*, the Court of Appeals analyzed the "Charge of Discrimination" form in addition to the "Charge Information Form" in order to determine whether the plaintiff had exhausted her hostile work environment claim. But the Court of Appeals in *Williams* expressly held that both of the documents independently qualified as EEOC charges. As the Court of Appeals explained, "We conclude that Williams's first EEOC filing, the 'Charge Information Form,' is a charge for her claim of a sexually hostile work environment." *Id.* at 509. And later, "We *also* conclude that Williams's second EEOC filing, the 'Charge of Discrimination,' is a charge for her claim of a sexually hostile work environment." *Id.* at 510 (emphasis added).

Defendant's reliance on cases that reach the opposite conclusion of *Williams* is misplaced, because those cases neither interpret nor alter the law of this circuit. *E.g.*, *Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 F. App'x 727, 730–32 (10th Cir. 2012); *Williams v. County of Cook*, 969 F. Supp. 2d 1068, 1074–77 (N.D. Ill. 2013); *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 228–31 (D.D.C. 2012).

Finally, the Court's decision in *Davenport v. Asbury, Inc.*, does not change the outcome here. 2013 WL 1320696, at *6–12 (E.D. Tenn. March 29, 2013). In *Davenport*, the Court concluded that an intake questionnaire did not meet the verification requirement to be an EEOC charge. *Id.* The Court's conclusion was based on the

13

specific circumstances of the case. There, the plaintiff's subsequently-filed "Charge of Discrimination" form did not cure the technical defect of her unverified intake questionnaire, because the "Charge of Discrimination" form had been signed by the plaintiff's attorney and therefore was not verified by the plaintiff. Although the plaintiff had eventually filed a verified "Charge of Discrimination" form, she did not do so until after she had received her right-to-sue letter and initiated her civil action. *Id.* at *11–12. Here, the "Charge of Discrimination" form was signed and verified by plaintiff, and it was filed prior to the conclusion of the EEOC's investigation.

Accordingly, the Court will consider the content of all three of plaintiff's documents when determining whether she has exhausted her administrative remedies.

### 2. Exhaustion of Title VII Hostile Work Environment Claims

Plaintiff has exhausted her administrative remedies with respect to her Title VII hostile work environment claims. Plaintiff's "Intake Questionnaire" lists the October 2009 drug testing incident and describes how she was treated differently than a white male "member of medical staff" when she offered to take a late test [Doc. 10-1 p. 3]. Plaintiff names Mr. LeVan as the "person responsible" for her treatment in connection with the October 2009 drug testing incident [*Id.*]. The "Intake Questionnaire" also names three people who plaintiff anticipated would tell the EEOC, respectively, that "unfair treatment has occurred," that Mr. LeVan "has a history of racist behavior," and that Mr. LeVan "has a history of discriminatory behavior" [*Id.* at p. 5]. Plaintiff checked boxes

14

for discrimination on the basis of race and gender in both the "Charge of Discrimination" form and the "Intake Questionnaire" [*Id.* at p. 1, 3].

Additionally, although plaintiff's "Response for EEOC Document" primarily focuses on the circumstances surrounding defendant's investigation into her procurement practices, it nevertheless notes the existence of a hostile work environment. Plaintiff writes that she informed one of defendant's investigators that "I felt I had been discriminated against and subjected to a hostile environment at Y-12 several times in the past and was not comfortable being interviewed alone" [*Id.* at p. 6]. Plaintiff also alleges that Mr. LeVan refused to approve plaintiff's trips to conferences or workshops, when he would approve such trips for white employees [*Id.* at p. 7–8]. And plaintiff alleges that Mr. LeVan refused to address a co-worker's harassment of plaintiff regarding a "shoe policy issue" [*Id.*].

The factual allegations in plaintiff's EEOC charges are sufficient to prompt an EEOC investigation into whether defendant created a hostile work environment due to harassment on the basis of race or gender. Therefore, plaintiff has exhausted her administrative remedies regarding her Title VII hostile work environment claims.

### 3. Exhaustion of ADA Claims

Plaintiff also has exhausted her administrative remedies for her ADA claim. In her complaint, plaintiff alleges that defendant violated the ADA when it terminated her employment because of her alleged disability [Doc. 10 p. 8]. She specifies that her disability is sleeplessness, anxiety, and depression [*Id.*].

15

Defendant correctly notes that plaintiff did not check the boxes for disability discrimination in her "Charge of Discrimination" form or "Intake Questionnaire" [Doc. 10-1 p. 1, 3]. Nor did she complete the questions in the "Intake Questionnaire" that ask for details regarding alleged disability discrimination [*Id.* at p. 4].

Nevertheless, plaintiff's EEOC charges are not devoid of information regarding disability discrimination. In the "Intake Questionnaire," plaintiff checked the box indicating that she has a disability, writing "chronic anxiety/depression" underneath [*Id.* at p. 2]. Additionally, in the "Response for EEOC Document," plaintiff indicates that she informed defendant's investigators of her alleged disability prior to her termination:

> Due to the stress of this situation and the exacerbation of my current medical condition (for which I was already on FMLA for part-time work), I proceeded to see my treating physician on Friday, November 4, 2011[,] who removed me from work until a follow-up appointment on November 18, 2011. I informed Ms. Bishop by phone of my physician's recommendation and thus did not meet with [her] on that Monday.

[*Id.* p. 6]. Considering that plaintiff's employment was terminated a few weeks after she allegedly informed defendant's investigators of her medical condition, the factual allegations in plaintiff's EEOC charges are sufficient to prompt the EEOC to investigate whether plaintiff was discriminated against on the basis of disability. Therefore, plaintiff has exhausted her administrative remedies with respect to her ADA claim.

### 4. Exhaustion of Claims Concerning Plaintiff's Drug Tests

Although defendant states in its motion to dismiss that plaintiff failed to exhaust her administrative remedies for "claims concerning plaintiff's drug tests," the Court can

16

find no briefing of this argument in defendant's motion papers. Therefore, the Court concludes that the argument has been waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

In any event, plaintiff does not need to exhaust her administrative remedies in order to bring claims under § 1981. *Williams*, 643 F.3d at 510 n.3. And, as discussed below, any discrete claim for discrimination under Title VII arising from the drug tests in October 2009 and October 2010 would be time-barred. Therefore, it is not necessary for the Court do decide whether plaintiff has exhausted her administrative remedies for claims "concerning [her] drug tests."

### B.  Statute of Limitations

Defendant next argues that the "claims concerning plaintiff's drug tests" are barred by the statute of limitations. Specifically, defendant argues that any claim under Title VII or the ADA arising from the drug testing incidents in October 2009 and October 2010 is time-barred, and any claim under § 1981 arising from the October 2009 drug testing incident is time-barred. Plaintiff responds that "the events surrounding the drug testing are timely as component acts of her hostile work environment claim" [Doc. 23 p. 10].

### 1.  Statute of Limitations under Title VII and the ADA

In order for a civil claim to be timely under Title VII or the ADA, a plaintiff must have filed a charge raising that claim with the EEOC within 180 days of the discriminatory act, or within 300 days of the discriminatory act if proceedings were first

initiated with a State or local agency.  42 U.S.C. § 2000e–5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA); *see Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (finding that the statute of limitations begins running when a discriminatory act occurs rather than when its effects are felt).

In this case, the drug testing incidents in October 2009 and October 2010 were discrete acts.  *See Russell v. Ohio Dept. of Admin. Servs.*, 302 F. App'x 386, 390 (citing *E.E.O.C. v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 838 (6th Cir. 1988)) (giving an example of a continuing violation as unequal pay that continues to be paid unequally); *see also E.E.O.C. v. United States Steel Corp.*, 2012 WL 3017869, at *7 (W.D. Penn. July 23, 2012) (finding that workplace drug tests are discrete acts).  Plaintiff brought her first EEOC charge on November 4, 2011, more than 300 days after the last drug testing incident occurred in October 2010.  Consequently, any discrete claim of discrimination arising from the drug testing incidents in October 2009 or October 2010 under Title VII or the ADA would be time-barred.

Nevertheless, the drug testing incidents may serve as evidence in support of plaintiff's hostile work environment claims.  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000–5(e)(1)).  "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period."  *Id.*  "Provided that an act contributing to the claim occurs within

the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

In this case, plaintiff's hostile work environment claims cover the entire period of her employment. Plaintiff alleges that she was "continually harassed" by Mr. LeVan, who treated her differently than white male employees in the types of comments he would make to her and also in requiring her to violate procurement and requisition procedures [Doc. 10 p. 4]. Indeed, it was these violations that plaintiff alleges ultimately led to her termination [*Id.* p. 5–8]. Plaintiff also alleges that Mr. LeVan referred to women as "bitches" "[d]uring the course of" her employment [*Id.* p. 4].

Plaintiff was removed from her Wellness Coordinator position on November 2, 2011, and her employment was terminated on November 21, 2011 [Doc 10 p. 7–8]. She brought her EEOC charges in the same month [Doc. 10-1 p. 1, 5]. Therefore, her hostile work environment claims are timely and may rely on the October 2009 and October 2010 drug testing incidents as evidence of a hostile work environment.

### 2. Statute of Limitations under § 1981

There is a four-year statute of limitations for claims brought under § 1981. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004). Plaintiff filed her complaint on November 11, 2013. Therefore, any claim arising from the October 2009 drug testing incident is time-barred. Any claim arising from the drug testing incident in October 2010 is not time-barred under § 1981. Plaintiff's hostile work environment claim due to

19

harassment on the basis of race is not time-barred under § 1981 for the same reasons that it is not time-barred under Title VII.

### C.     Failure to State a Claim

Defendant moves to dismiss, for failure to state a claim, plaintiff's claim for discrimination arising from the October 2010 drug testing incident and her hostile work environment claim due to harassment on the basis of race under § 1981 [Doc. 21 p. 16–18]. Because plaintiff's claim for discrimination arising from the October 2010 drug testing incident may only proceed under § 1981, defendant's argument is limited to the claims that plaintiff has brought under § 1981. Nevertheless, the Court's analysis would be the same if applied to plaintiff's hostile work environment claim due to harassment on the basis of race under Title VII. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009) ("[W]e review § 1981 claims under the same standard as Title VII claims.").[4]

### 1.     Claim for Discrimination Based upon the October 2010 Drug Testing Incident

To prevail on a claim for discrimination under § 1981, plaintiff must show that defendant discriminated against her because of her race. 42 U.S.C. § 1981; *see Barrett*, 556 F.3d at 511–12. At the pleadings stage, plaintiff need only state a plausible claim for relief, with "plausibility" occupying "that wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citing *Iqbal,*

---

[4] Defendant does not argue that plaintiff's hostile work environment claim due to harassment on the basis of gender under Title VII should be dismissed for failure to state a claim [*see* Doc. 21 p. 16 n.8], and the Court would find that plaintiff has stated a facially plausible claim to relief on that claim.

556 U.S. at 678). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id.*

Plaintiff has met this requirement. By way of providing context for the October 2010 drug testing incident, plaintiff alleges that she was treated differently than white employees after inadvertently missing a drug test in October 2009 [Doc. 10 p. 3]. Among the people involved in deciding the consequences of plaintiff's missed drug test was her white supervisor, Mr. LeVan, who she alleges treated her differently than white employees throughout her employment [*Id.* at p. 3–4]. Plaintiff filed an ethics complaint as a result of the disparate treatment she allegedly received in connection with her missed drug test [*Id.* at p. 4].

Regarding the October 2010 incident that is the subject of her § 1981 discrimination claim, plaintiff describes how she was twice required to provide a urine sample in full view of an unnamed agent [*Id.*]. Plaintiff alleges that this procedure differed from the procedure for collecting testing samples that was applied to white employees, including Mr. LeVan [*Id.*]. Plaintiff further alleges that the procedure violated federal guidelines for workplace drug testing programs [*Id.*]. And she alleges that the incident was embarrassing, degrading, and humiliating [*Id.*].

Defendant argues that plaintiff has not alleged any facts to support a finding that she was treated differently than employees who were similarly situated to her, that is, employees who were on probation for having missed a drug test. But "the mere existence of an 'eminently plausible' alternative, lawful explanation for a defendant's allegedly

21

unlawful conduct is not enough to dismiss an adequately pled complaint because pleadings need only be 'plausible, not probable.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.,* 648 F.3d 452, 458 (6th Cir. 2011)).

Accepting plaintiff's allegations as true, and viewing them in the light most favorable to her, the Court finds that plaintiff has stated a facially plausible claim to relief.

### 2.     Hostile Work Environment Claim Under § 1981

To prevail on her hostile work environment claim due to harassment on the basis of race under § 1981, plaintiff must show that she was required to work in a "discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). In other words, plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Id.* (quoting *Vinson*, 477 U.S. at 65, 67) (internal citations omitted).

Defendant argues that the Sixth Circuit's unpublished decision in *Ross v. Mich. State Univ. Bd. of Trs.* provides the "elements" that plaintiff "must set forth" in her complaint in order to state a claim for relief:

> In order to establish a prima facie claim of a racially hostile work environment, Ross must demonstrate the following: (1) he is a member of a protected class; (2) he was subjected to unwelcomed racial harassment; (3) the harassment was based

22

on race; (4) the harassment had the effect of unreasonably interfering with his work performance; and (5) MSU is liable.

2012 WL 3240261, at *3 (6th Cir. June 20, 2012).

To the extent that *Ross* can be read as suggesting a pleading standard rather than simply taking into account the elements from which a trier of fact may infer a hostile work environment, the decision stands in tension with the Sixth Circuit's published decision in *Keys*, 684 F.3d at 608–10. *Keys* held that the prima facie case standard for discrimination claims, set forth in *McDonnell Douglas*, does not apply at the pleadings stage. 684 F.3d at 609 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–14 (2002)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The Court of Appeals explained that applying the prima facie case standard for discrimination claims at the pleadings stage would impermissibly narrow the "plausibility" pleading standard. *Id.* (citing *HDC*, 675 F.3d at 614).

Similarly, the Court concludes that a plaintiff need not specifically plead each of the prima facie case factors for a hostile work environment claim in order to state a facially plausible claim to relief. Rather, it is enough for a plaintiff to plead sufficient facts from which "a reasonable court can draw the necessary inference" that the defendant is liable for creating a hostile work environment. *See Keys*, 684 F.3d at 610.

Plaintiff has done so here. As previously discussed, plaintiff has alleged that defendant's employees, including a supervisor, engaged in discriminatory actions beginning with the drug testing incident in October 2009 [Doc. 10 p. 2–4]. Plaintiff alleges that she once again was discriminated against when she was subjected to a

23

degrading drug testing procedure in October 2010 [*Id.* at 4]. These drug testing incidents frame the harassing comments and discriminatory behavior that plaintiff claims she was subjected to throughout her employment [*id.* at 4–5], including her exclusion from training opportunities and Mr. LeVan's insistence that plaintiff violate workplace procurement procedures when he did not require the same of white employees [*id.* at 4–8]. Viewing these incidents and circumstances as a whole, it is reasonable to infer that plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe to alter the conditions of her employment and create an abusive working environment. Therefore, plaintiff has stated a facially plausible claim to relief.

## IV.    Conclusion

For these reasons, Defendant's Renewed Partial Motion to Dismiss [Doc. 20] is **GRANTED in part and DENIED in part**. Accordingly, the following claims are hereby **DISMISSED**: any discrete claim for discrimination under § 1981, Title VII, or the ADA arising from workplace drug testing that occurred in October 2009, and any discrete claim for discrimination under Title VII or the ADA arising from workplace drug testing that occurred in October 2010.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE